### L. P. W. BALCH, trustee, *vs*. JACOB ZENTMEYER.
#### *December* 1840.

D. devised a tract of land, to be divided into three parts, one part he devised to S. for life, the other two parts, to be rented out by his executors, and directed, that when his grand-son H. came of age, all his lands should be divided equally among his grand-children. J. the husband of the tenant for life, purchased the interest of one of the grand-children, and while thus possessed, a sale was made by the sheriff upon *fi. fa.* against J., under the following levy, viz : "all the right, title, interest, and estate, of the said J. of, in, and to, all that tract or parcel of land on which the said J. lately resided, and heretofore devised to S. by D." *Held,* that this levy and sale transferred the interest, which J. purchased of the grand-son as well as that derived by marriage.

The land described, is that tract, on which J. lately resided, and which D. devised to S.; all the *title* of J. in land answering that description, passed under the levy and sale.

Where a decree directs a sale for the purpose of distribution among the parties who shall appear on the final hearing to be entitled, a purchaser for value of the estate and interest of one of the parties, may by petition claim his portion of the proceeds.

When a fund is in court, and the decree under which it is brought in, has left open the question of distribution, a claimant by petition, not a party to the bill, of a part of the fund in opposition to another claimant originally a party, need not ask for a subpœna either against the original party or another claimant, also in the cause by petition—nor pray relief—nor procure an order *nisi* on his opponents.

The object of the service of the copy of a petition and an order *nisi*, is to give notice to the opposite side, that he may appear and contest the claim, and when the opposing party has appeared and contested the right; it is too late to object to the want of notice by petition and order.

APPEAL from the equity side of *Frederick* County Court.

On the 2nd January 1833, *John Gantz* and wife, and *George Clevedence* filed their bill for a decree to divide a portion of the real estate, of which *Daniel Gaver* died seized, among his de-

visees, the same being incapable of division. With the bill were filed the will, (an extract of which will be found in the opinion of this court) under which the parties claimed, and sundry conveyances from the devisees. Answers being filed, and the parties consenting, on the 31st January 1833, the county court (SHRIVER, A. J.,) decreed a sale of a tract of land, for the purpose of distribution among the parties who shall appear to be thereto respectively entitled, at the final hearing of the cause, and appointed the appellant a trustee for that object; a sale was made, reported and ratified. At April term 1833, *Abraham* and *Samuel Toms*, executors of *Daniel Toms*, filed their petition, to be paid out of the proceeds of this land, as judgment creditors of *George Gaver*, one of the devisees, and which petition was referred to the auditor to be examined and reported on. At same term a similar petition was filed by *Henry Delanter*, also claiming to be a creditor of *George Gaver*, which was also referred to the auditor. And also by *Michael Toms*, as judgment creditor of *Daniel* and *George Gaver*, two of the devisees of *Daniel Gaver* the elder, which was also referred to the auditor. The claims of *Michael Toms*, were excepted to by *Samuel* and *Abraham Toms.* 1st. That the real estate of *Daniel Gaver*, was at no time bound by the judgments, no lien thereon having been rendered by a justice of the peace. 2nd. Barred by limitations more than twelve years since their rendition. These judgments were rendered 21st March 1821, and filed as claims in April 1833. The said *S.* and *A. Toms*, also filed a petition and claim against *Daniel Gaver*, which accrued 14th March 1826.

On the 3rd May 1833, *John Richter*, filed his petition and claim against the proceeds of said land, and for a lien on the part assigned by said *John Gaver*, (one of the devisees of *Daniel Gaver* the elder,) to *John Hay*, *Richter* being the creditor of *Hay*, on the following note:

"Four months after date, I promise to pay unto *John Richter*, or order, the sum of fifty-nine dollars, on a piece of land that I bought of *John Gaver*. Witness my hand and seal this 15th April 1822.        JACOB HAY. (Seal.)"

And which note the petition alleged, that both *John Gaver* and *Jacob Hay*, agreed with *Richter*, should be a lien on said land, and that *Hay* had assigned the land to *Daniel Palmer*, one of the defendants to the bill, with express notice of *Richter's* claim, before he received his conveyance. Subpœnas were issued against *Hay* and *Palmer;* and *John Gaver*, was proceeded against by publication. *Jacob Hay* answered, admitting *Richter's* claim. Various other claims of creditors of the devisees were filed, when at February term 1838, *Jacob Zent-meyer*, filed his petition claiming, that upon a judgment against *Jacob Hay*, obtained in *Frederick* county court, 29th Oct. 1822, he sued out a *fi. fa.*, and in January 1823, levied it upon the interest and estate, which *John Gaver* had assigned to said *Jacob Hay*, on the 18th April 1822, and purchased the same; that the sheriff of *Frederick* county court, returned such levy and sale, and executed a deed therefor, which was lost by accident, and on the 20th August 1832, the said sheriff executed another deed to petitioner, for his said purchase, which was duly recorded. The various documents referred to, were filed with said petition; and so far as they are material to this cause, will be found recited in the opinion of this court.

*John Richter* and *Daniel Palmer,* excepted to the petition of *Jacob Zentmeyer*.

1st. That his judgment was barred by limitations.

2nd. Limitations to *scire facias*.

3rd. Defect of description in the land levied upon. *Jacob Hay* had married *Susannah*, one of the joint devisees with *John Gaver*, who had conveyed to him—and that the levy only related to the interest *Hay* acquired by marriage. See the levy on the opinion of this court. And that *Zentmeyer* acquired in interest by his levy and purchase at sheriff's sale, in the part one-sixth conveyed by *John Gaver* to *Jacob Hay*.

Upon the reference to the auditor accounts were stated, and on the 15th November 1838, the county court (J. BUCHANAN, C. J., A. SHRIVER and T. BUCHANAN, A. J.,) passed the following order:

The auditor having stated an account in this cause, allow-

ing to *Daniel Palmer*, one-sixth part of the proceeds of the sale of the land mentioned in said case, it is ordered by the court here, sitting as a court of equity, that the allowance to *Daniel Palmer* be disallowed, and that the auditor restate said account, and allow to *Jacob Zentmeyer*, one-sixth part of the whole proceeds of the sale of said land, called the *Land of Promise.*

The auditor having stated an account in conformity with the court's order, this was also excepted to, and on the 11th March 1839, overruled by the court. From these orders *L. P. W. Balch*, trustee for the sale of the real estate of *Daniel Gaver*, prosecuted the present appeal.

The cause was argued before Stephen, Archer, Chambers, and Dorsey, J.

By Balch for the appellant, who contended—

1st. There is no proof, that the sale was for the benefit of the infant children of *H. and D. Gaver.*

2nd. There is no evidence as to the minors, that the land devised to them by *Daniel Gaver*, the testator, was incapable of partition, and until such proof was adduced, no sale of their share could be decreed.

3rd. There is no evidence binding the infants of the death either of the testator's widow, or of *Susannah Beckenbaugh*, before the happening of which events, no sale could be decreed.

4th. The decretal order of November 15th 1838, was erroneous, because the petition on which it was founded, made no person a defendant thereto, prayed no relief against any one, nor was any copy thereof, or order *nisi* served on any person whatever.

5th. That the appellee's petition was not the appropriate remedy to control, alter or vary the final decree of April 11th 1833, by which *Daniel Palmer* had been adjudged to be the owner in fee of the land claimed by appellee.

6th. That all the depositions taken *to* sustain said petition, were taken illegally, because there was no issue joined between the appellee and any other person.

7th. That the exceptions to the testimony of *Beall* and

*Morgan*, and to the petition of *John Haine*, should have been disposed of before the case was referred to the auditor.

8th. That the court decided the legal title of the appellee, to the sixth share of the *Land of Promise*, was preferable to the legal title, of *Palmer* to the same land.

9th. That the exhibits filed in support of appellee's petition shew, that he had no title to the land therein specified.

10th. That if the appellee is the legal owner of any part of the land claimed, he ought to have been a party to the original bill.

11th. The court did not make a final adjudication of the whole subject matter before it.

12th. The exceptions filed by *Palmer* and others, dated December 24th 1838, and January 7th 1839, were improperly overruled.

WORTHINGTON for the appellee, submitted the following argument in writing:

The first exception is to the petition of *Jacob Zentmeyer*, the appellee, on the ground that *John Richter* and *Daniel Palmer*, the exceptants, were not made parties to the said petition. *John Richter* was not a defendant to the original bill, but he filed his petition claiming a part of the proceeds of sale, in right of *John Gaver*, one of the devisees. His petition was filed prior to that of the appellee. *Palmer* was one of the original defendants. *Richter* and *Palmer* were, then, parties to the proceeding, and the fund was in court.

Where the fund and the parties interested are all in court, it is not necessary to pray subpœnas. *Duvall vs. Farmers' Bank of Maryland*, 4 *Gill & John.* page 293 *of the case; Macubbin et al. vs. Cromwell*, 2 *Harr. & Gill*, 443. In the cases here cited, there was no subpœnas prayed, or orders *nisi* passed. But if an order *nisi*, or subpœnas were necessary, in the case under consideration, the exceptants have virtually waived such a procedure, by their voluntary appearance and exceptions to the petition. The object of a subpœna is to bring the parties into court, so that they may answer, plead or demur to the bill or petition. An order *nisi*, when served, is notice to a

party already in court, that unless he show cause to the contrary, the application of the party at whose instance it was granted, will be entertained and disposed of as the nature of the case may require. If a party, then, appear without summons, or show cause without an order *nisi*, the necessity of either is superseded.

The second exception is *Briarean* in its aspect. The first attempts to shut out the testimony taken before the auditor, *because it was not taken under a proper and legal commission.* The solicitor of the exceptants was present at the examination of the witnesses, before the auditor, and, it is to be presumed, the testimony was taken by consent. If a commission had been necessary, it is thus waived by the parties. But a commission to take testimony before the auditor is not necessary. The power is incident to his office. *Alexander's Chan. Prac.* page 7 ; *Bland's Reports*, 469.

It next excepts to the testimony of *George Gaver* and *Jacob Hay*, junior. The point of the objection is not stated, otherwise than that it was *improperly overruled.* The objection that the exhibits, forming a part of *Zentmeyer's* petition, do not sustain the averments therein, and do not show that *Zentmeyer* is entitled to a sixth part of the proceeds of the sale of "*The Land of Promise*," but to a different tract, is *petitio principii.*

The objection, that the judgment was of more than twelve years standing, and therefore, not admissible in evidence, betrays the weakness of the defence. The land in question was sold under the judgment, and hence, its exhibition.

The objection, that the *fi. fa.* and return thereon, is not a memorandum or note in writing, of the sale of the sixth part of "*The Land of Promise*," because it makes no mention of the said tract of land, *either by its name or quantity*, is equally untenable with the one immediately preceding.

The return of the sheriff refers to the schedule. The schedule speaks of all the estate of *Jacob Hay*, in that tract or parcel of land which was devised to *Susanna Hay*, his wife, by *Daniel Gaver*, by his last will and testament, dated on or about the

12th day of April, 1798. By referring to the will of *Daniel Gaver*, it will be seen that he devised to *Susannah Beckenbaugh* (who afterwards married *Hay*) all that part of "*The Land of Promise*" which laid on the south side of *Middle Creek*, for twelve years, and after that period, one-third of the said land during her life. He then devises all the residue of his estate to the children of *Susannah Beckenbaugh*, as tenants in common. After the death of *Susannah Beckenbaugh*, the land devised to her formed a part of the *residuum*. *John Gaver* was one of her children, and as such was entitled, as a tenant in common, to an undivided sixth part of the reversion. *John Gaver* conveyed his undivided part of the land, of which his mother was tenant for life, to *Jacob Hay*, as may be seen on the 13th page. He conveys all his right, title and interest to "all that undivided part of a tract of land, called '*The Land of Promise*,' which was devised by *Daniel Gaver* to *Susannah* now the wife of *Jacob Hay*, as a life estate, of which the said *John Gaver* is entitled to an undivided interest;" and he then sets out by course and distance the part so devised to *Susannah Beckenbaugh*, which no doubt had been allotted to her in the division directed by the will of *Daniel Gaver*. The identity of the land sold by the sheriff is thus traced. All the right, title and interest of *Jacob Hay*, in the land devised to his wife, was sold. His title was to one undivided sixth part, after the death of his wife, and an interest in the whole during the joint lives of himself and wife. *Zentmeyer*, then, by the sale to him, became entitled in right of *Hay*, to an undivided sixth part of "*The Land of Promise*," as held by his wife under the will of *Daniel Gaver*, and to which *John Gaver* would have been entitled after the death of *Mrs. Hay*, had he not conveyed to *Jacob Hay*. View, then, in connexion, the return of the sheriff, the will to which it refers, and the deed from *Gaver* to *Hay*, and not a doubt can remain upon the mind as to the identity of the land sold by the sheriff to *Zentmeyer*. That is certain, which may be rendered certain. There is nothing more common than one deed, without any description, referring to another, for the description. The schedule refers to the will as

*descriptive* of the land sold, not as evidence of *Hay's* title. *Hay's* title is derived from *John Gaver*, and the sheriff never refers to the paper title of a debtor to lands sold by him. It is not the sheriff's deed, or his return that transfers the debtor's title to the purchaser, but it is the sale which affects this office. The deed or return is only evidence of the sale. *Boreing's Lessee vs. Lemon*, 5 *Harr. & John.* 223. *Barney vs. Patterson*, 6 *Harr. & John.* 204, 205. In addition to the return of the sheriff, a deed was executed by him to the appellee, shortly after the sale, and left in the clerk's office to be recorded, but it was lost before admitted to record, and in consequence thereof, the sheriff who made the sale, executed, several years afterwards, another deed for the land, as will appear by the deposition of the sheriff, and his second deed. It is not necessary that the return should be endorsed on the writ, or the deed executed at the time of sale. If made afterwards, they are sufficient memoranda in writing under the statute of frauds. 3 *Gill & John.* 359.

The deed relates back to, and, in judgment of law, is executed at the time of sale. *Jackson vs. Ramsay*, 3 *Cowen*, 75. But there was no necessity for the deed; the sheriff's return is equally available.

That it was "*The Land of Promise*" which was sold, sufficiently appears, if further proof is necessary, by the testimony of *Jacob Hay, jr.*, and *George Gaver*. But further evidence is not necessary—the schedule and deed are certain to any reasonable intent, and particularly so, when they are to be construed according to principles of equity. A lynx-eyed criticism, exercised on instruments of this character, would invalidate almost every title acquired under them. It is also objected, that a release from the appellee to the purchaser of the land ought to have accompanied his petition. If he receive, under his petition, his proportion of the proceeds, is he not as fully estopped from any further claim no the land, as if he had executed a formal release? It is a case similar to that of a widow, who accepts a portion of the proceeds of sale in lieu of dower. She never executes a release, nor do any,

of the parties join the trustee, to perfect the title to the land sold.   But the trustee conveys all her interest as well as that of all the parties, whether original or who may become such, in the progress of the cause, by petition or otherwise.   So much for the second exception.

The third exception is difficult to comprehend.   How the rights of the exceptants are taken away, *incidentally or collaterally,* by the *ex parte* order of November 15th, 1838, *without the same being put in issue,* or coming directly before the court, is no where explained or indicated.   This exception is too vague under the act of 1825, ch. 117.

The fourth exception proceeds upon the dignity of the claims of the exceptants.   How claims arising upon a note, and upon a deed, subsequent in date to a sale of the land and the return of the sheriff, are more dignified than the claim of the appellee, is not perceived;—the distinction is too subtle for ordinary optics.   Prior to the exceptions under consideration, an audit had been made on the 5th of May 1836, allowing $101.33 to *John Richter* and $351.28 to *Daniel Palmer*, in right of *John Gaver*, and before there was any action of the court upon it, *Zentmeyer*, at February term 1838, filed his petition, claiming the share of *John Gaver*.   This was in effect an exception to the audit.   At the same term *John Richter* and *Daniel Palmer* filed exceptions to the said petition of the appellee.   I will now proceed to notice those exceptions, which were prior to those I have heretofore considered.   The first exception is to the short copy of the judgment, *because said* judgment was more than twelve years standing, at the filing of the petition, and because it does not appear *from the said exhibit* to have been revived by *scire facias*, nor *continued* by successive renewals of *fi. fa.*, and the act of limitations is, therefore, pleaded.   The judgment is exhibited, only as a link in the chain of title; and miserable would be the condition of purchasers, if their title were barred, after a lapse of twelve years, unless they kept the judgment alive, *ad infinitum*, by *scire facias* or successive renewals, by *fi. fa.*   Their title would be very little better than that acquired from *St. Bernard*

at the head of the *Crusaders*, who granted a hundred acres in heaven, to those who gave him ten upon earth.

The second exception is equally novel. It objects to the *fi. fa.* because it was never renewed, and because three years had elapsed since it was returned, and therefore, it is *inoperative* and *inadmissible as testimony*, and void for *uncertainty*. The *fi. fa.* is in the usual form, and in what its uncertainty consists, must be a discovery of recent date; and must have required as much mental effort as the discovery of the square of the hypothenuse, being equal to the square of the other two sides of a triangle, by the sage Pythagoras.

The third exception, after others before noticed is, that no advertisement of the sheriff any where appears. If the sale of the sheriff is impeachable, on the omission to give due notice, that fact must appear affirmatively. It must be shown by those who object to the sale—for the sheriff is presumed to have performed his duties. *Hanson vs. Barnes*, 3 *Gill & John.* 359. It is further objected that the interest in the land sold to the appellee, was the life estate of *Susannah Hay*, and therefore, the appellee is estopped from claiming the proceeds of the sixth share. This objection is equally untenable. *Susannah Beckenbaugh* was the wife of *Jacob Hay* at the time of the levy and sale, and the schedule and sheriff's deed refer to her only, to identify the land. All *Hay's* interest in the land is sold in whatever manner acquired. His interest in right of his wife is not mentioned. It cannot, then, be confined to that interest. Suppose the sale had been of all *Hay's* right and estate in the tract of land called "*The Land of Promise*," containing so many acres, would it have been necessary to state in what manner he acquired his title? It is never done. The deed from *Gaver* to *Hay* explains why the name of *Hay's* wife is introduced. It is the same as if the schedule and deed had referred to all *Hay's* interest in the land devised to *Susannah Beckenbaugh*. It would then have appeared that he was entitled to one-sixth part of the land devised to *Susannah Beckenbaugh*, after her death—and this is the evident meaning of the schedule and the sheriff's deed. All *Hay's* interest was

sold, and it is seen that he had an interest under the deed of *John Gaver* to him; and this is the only interest the appellee ever claimed. If *Hay* was entitled to a further interest, in right of his wife, at the time of sale, it was a matter entirely foreign to the present inquiry.

The fourth exception proceeds upon the ground that the deed from the sheriff to the appellee, being subsequent in date to that of *Hay* to *Palmer,* is not entitled to the preference claimed. But the levy and sale were prior in date to *Palmer's* deed, and as before observed, the sale transfers the title, and the sheriff's deed is the only evidence of the sale; and moreover, *Palmer* knew that a deed had been executed to the appellee, but was lost before he took the deed from *Hay,* as may be seen by the testimony of *Morgan.* All the exceptions have thus been answered. The court will note, that the exceptions last answered, were made to the *petition* of the appellee, and that on the argument of the same, the court passed an order disallowing the sum audited to *Palmer,* and instructed the auditor to re-state the account, and to allow to the appellee one-sixth part of the proceeds of the sale of "*The Land of Promise,*" which was accordingly done.

The last audit was dated 22nd December 1838, and on the 24th December 1838, *Richter* and *Palmer* filed exceptions to this audit, nearly all of which are identical with those which had been made to the petition of the appellee, and which had been decided by the court, in its order or decree of the 15th November 1838. On the 7th of January 1839, additional exceptions were filed to the last *audit.*

The first additional exception denies the right of the appellee to file his petition to affect in any way the decree for the sale of the land, which had become final and absolute; that the court was not competent to control the final decree, at the date of the appellee's petition, *in any other way than by a bill of review,* and the exceptants therefore, except to the said petition, &c., and the order of November 15th, 1838, and the audit founded thereon, *because thereby the final decree in said cause was in fact controlled by an ex parte petition,* and *not by*

*a bill of review.* In answer to the first additional exception, I refer to *Millard vs. Baker*, 1 *Bland's Chan. Rep.* 148, and *Latimer vs. Baker, Ib.* 51–2. Further, the exceptants ought to be tied down to the reasons they assign, as italicised above.

The second additional exception is, that *because Palmer was in full life,* all the proceedings so far as *Zentmeyer* is concerned, from the petition to the audit aforesaid, inclusive, *are on the record itself null and void.* It is not necessary, I presume, to answer these additional exceptions. But will exceptions be allowed to the audit of 22nd December 1838, when the same had been made in pursuance of instructions by the court, after the argument on the proofs and merits by the solicitors of the parties concerned? To show the impropriety of this course of proceeding, I refer the court to *Alexander's Chan. Prac.* 127, 128. *Dorsey vs. Hammond*, 1 *Bland's Chan. Rep.* 463. *Duvall vs. Farmers' Bank*, 4 *Gill & John.* 282.

As to exceptions being too general, see *Scrivener's adm'rs. vs. Scrivener's ex'rs.* 1 *Harr. & John.* 743.

ARCHER, J., delivered the opinion of this court.

Various objections have been taken to the order of the court below, in favour of the appellee, some of which have reference to his right, in any form of proceedings to the fund; and some having reference to the form which he has chosen to adopt.

We propose, first, to inquire into the right of *Zentmeyer* to the fund in controversy.

A bill was filed by one of the devisees of *Daniel Gaver*, to obtain a sale of a portion of his real estate. The court of *Frederick* county decreed the sale, and the proceeds of sale, as reported by the trustee, remained in his hands, subject to the order of the court. *John Gaver* was entitled, by the devise of *Daniel Gaver*, to one-sixth of the land sold; and *Daniel Palmer*, who is one of the defendants in the cause, claims the proceeds arising from the sale of the one-sixth of the land devised to *John Gaver;* his pretensions are placed upon a conveyance from *John Gaver* to *Jacob Hay, Sr.*, and from *Jacob Hay* to him.

*John Richter* filed his petition after the sale, claiming a portion of the proceeds of *John Gaver's* part, upon the ground of an alleged lien he had obtained on *John Gaver's* part of the land, in virtue of an alleged agreement, entered into between *John Gaver, Jacob Hay* and himself, at the time of the conveyance from *John Gaver* to *Jacob Hay.*

The claims of *Daniel Palmer* and *John Richter*, remained undecided by the court, when at February term 1838, *Jacob Zentmeyer* filed his petition, claiming the entire fund, upon the ground that he became the purchaser of the land devised by *Daniel Gaver* to *John Gaver*, under a *fi. fa.* issued by him, on a judgment obtained against *Jacob Hay, Sr.*, subsequent to the deed from *John Gaver* to him.   The decision of the court below was in favour of *Zentmeyer*, to the whole of the fund which proceeded from the sale of the of the land devised to *John Gaver.*

It appears from the evidence in the cause, that on the 22nd of April 1822, *John Gaver* by his deed duly executed, acknowledged and recorded, conveyed to *Jacob Hay* all that part or parcel of land, which was the right of *John Gaver*, in and to all that undivided part of a tract of land called *The Land of Promise*, which was devised by *Daniel Gaver* to *Susannah*, (then the wife of *Jacob Hay*) as a life estate, and to which *John Gaver* was entitled to an undivided interest, and the deed proceeds to set out the metes and bounds of the land, an undivided sixth of which was thereby conveyed.

On the 29th October 1822, *Jacob Zentmeyer* recovered a judgment in *Frederick* county, against *Jacob Hay*, and issued a *fi. fa.* thereon, returnable to the following *March* term of that court. The sheriff under the *fi. fa.*, levied on the following property, to wit, "all the right, title, interest and estate of said *Jacob* "*Hay*, of, in, and to, all that tract or parcel of land, on which "the said *Jacob Hay* lately resided, and heretofore devised to "*Susannah Hay*, wife of the said *Jacob Hay*, by *Daniel Gaver*, "deceased, by last will and testament, dated on or about the "12th day of April 1798, with the buildings, &c."—and to the *March* term, 1823, the sheriff returned, made, to amount of $39.65, and *nulla bona* for residue.

On the 20th of August 1832, the sheriff who had made the sale, executed a deed to *Zentmeyer* (reciting the *fi. fa.*, levy and sale to *Zentmeyer*,) conveying to him as the purchaser the land thus levied upon and sold, which deed is in the usual form.

It is undoubtedly true, that *Zentmeyer* must show himself entitled to the land, before he can establish his claim to its proceeds; and it is objected, that he has shown no title.    This objection is rested on three grounds.

1. That the schedule of the sheriff is void upon its face for uncertainty.

2. That the levy if correct, was not on *Jacob Gaver's* interest, but on the interest of *Susannah,* the wife of *Jacob Hay,* acquired by him by his marriage, and that consequently there was no sale of *John Gaver's* interest.

3. That *Palmer* was entitled to priority, being a subsequent purchaser without notice.

1. There is no uncertainty in the description itself, and the schedule, and deed, would not be void for uncertainty in consequence of any thing apparent on their face.

If there be land on which *Jacob Hay* resided, and which was devised to *Susannah Hay* by *Daniel Gaver,* and to which *John Gaver* had an entire or undivided interest, and which was by *John Gaver* conveyed to *Jacob Hay,* undoubtedly the title of *Jacob Hay* would pass under such a sale to *Zentmeyer.* All the title of *Hay* in the land answering the description would pass, whether his title was derived by deed from *John Gaver,* or in part in virtue of his marriage with *Susannah.*    The description is definite, and clearly capable of ascertainment.

2. The above remarks might furnish a sufficient answer to the second objection to *Zentmeyer's* title; but we will advert to this objection more particularly.    The will of *Daniel Gaver* proved in 1798, having reference to this question, is in the following words:

"*Item*—I give and devise unto *Susannah Beckenbaugh,* who lives with my son *John,* and who had by him seven children, hereinafter named, all that part of my tract of land called *The*

*Land of Promise,* which lays on the *south east* side of *Middle Creek,* which part I suppose, contains 400 acres; this said part I devise to her for the term of *twelve years* from this time, as she now possesses it; at the expiration of that time, I direct the said 400 acres to be divided into three parts, one of the said parts I devise to the said *Susannah Beckenbaugh during her life.* The other two parts, I direct my executors to rent out on the best terms by my exeuctors, and the rents arising from the lands, to be put out on interest immediately they can be received. These devises to the said *Susannah Beckenbaugh,* I make to her, to enable her to raise, maintain and educate the seven children my son *John* had by her." Then after devising sundry lands to his wife, he directs that when his grand son *Henry* comes of age, all his lands shall be equally divided among his seven grand-children."

The sale to *Zentmeyer,* was of all the right of *Hay* to the lands devised to *Susannah* by *Daniel Gaver.* The land devised to her, was first the whole *Land of Promise* for twelve years; and after the expiration of the twelve years, the one-third thereof, to her for life; and after her death, the one-third thus devised to her, passed under the will in undivided rights to his grandchildren, of whom *John Gaver* was one. The twelve years above referred to, had expired in 1810, and at the date of the levy and sale, *Susannah Hay* was in possession of her life estate under the devise, and *Jacob Hay* had a right to one-sixth of the reversion, after the death of his wife, in virtue of the deed of *John Gaver* to him, dated 18th of April 1822. There would seem, from the statement of the case, to be no difficulty in ascertaining what passed under the sale. The right of *Jacob Hay* to the land devised to his wife *Susannah,* passed, whatever was the nature or character of that right. If he possessed, in virtue of his marriage any right, that passed; and if he acquired right under the deed from *John Gaver,* as he did, they likewise passed. For the reference in the schedule to the lands devised to *Susannah* is not intended to indicate *the estate* which was seized, (that is, that it was her life estate which was seized,) but was intended as a description of the *land* taken, and

it will therefore pass any interest, which he had either in the·
life estate or in the reversion.

For the third objection, there is as little pretence.  *Palmer*
could not be considered as a purchaser without notice.   The
return of the sheriff, connected with the levy, made long before
his deed from· *Hay*, indicated that there had been a sale of the
land by the sheriff to some one.   That this was known to
*Palmer*, and that he further knew that *Zentmeyer* was the pur-
chaser, is abundantly apparent from his inquiry made of the·
sheriff, whether he had ever executed a deed to *Zentmeyer*, not
aware that the sale passed the title, when properly evidenced,·
and not the sheriff's deed, he rejoiced at the omission of the
sheriff to make the deed, and supposed, as we may infer, from
his subsequently taking a deed from the sheriff, that he could
overrule the claim of *Zentmeyer*.

The· claim of *Richter* to a portion of this fund, is unsupport=
ed by any evidence as against *Zentmeyer*.

There are various objections urged to the ·form of the pro-
ceedings· adopted by the appellee to obtain his claim.   We
have given to them all, a very careful examination; and will
proceed to state the conclusions to which we have arrived.

It is supposed, that instead of a petition, the appellee should
have filed a bill of review.   This objection is founded upon·
the idea, that a decree of the court had passed, recognizing
*Palmer's* right to the lands.·   But we do not perceive that the
decree has· any such result.   It directs a sale for the purpose
of distribution among the parties who shall appear on the final
hearing to be entitled; but determines nothing in favour of
*Palmer*, and leaves open the question whether the conveyances
to *Palmer*, passed to him such a title in the lands, as would
entitle him to a distributive share.

Again it is said, that the decretal order of 15th of Novem-
ber 1838, was erroneous, because the petition on which it was·
founded, made no person defendant; prayed no relief against
any one, nor was any copy thereof or order *nisi* served on any
one, prior to the order above referred to.   As the fund was in
court, and as some of the persons claiming the fund were par--

ties to the suit originally, and as the other claimants were in court, it was unnecessary to pray a subpœna. The object of the service of a copy and order *nisi*, is to give notice to the opposite side, that he may appear and contest the claim. It appears in this case that those opposed to the claim of *Zent-meyer*, did immediately after his petition, appear and contest the same, so that no surprise has been occasioned, or injury effected, by the failure to give notice, &c. And we therefore think they cannot object to the proceedings.

As the petitioner prayed that the fund should be paid to him, which was then in court for distribution, to the person or persons entitled thereto, it was equally unnecessary to have prayed relief against any one. He sought the fund, and not a decree for relief against any one of the parties.

We have noticed the prominent objections and exceptions which have been taken to the orders appealed from. There are others of minor importance, and as this opinion has already been extended further perhaps than was necessary, we shall content ourselves by saying, that after having given them all an attentive consideration, we cannot perceive that any of them can be sustained. The orders appealed from are affirmed with costs. In making this affirmance however, we desire to be considered as expressing no opinion on the right of the trustee in his own name to prosecute this appeal in behalf of parties present in court, and litigating their claim by their solicitor.                                          DECREE AFFIRMED.