EDWARD W. BELT, Administrator of GEORGE T. CRAUFURD, and others, *vs.* RICHARD S. BLACK-BURN, Administrator of DAVID CRAUFURD, and others.

*Waiver—Practice—Exceptions—Burden of Proof—Waiver of notice to appear—When Injunction may not issue—Act of 1861, ch. 32.*

A party may either expressly or impliedly waive a right or advantage, which he might have enforced in proper time and manner.

An appeal from an order granting an injunction, will be dismissed, if the answer be insufficient.

An appeal was taken from an order granting an injunction and the same was affirmed and the cause remanded. The case was reinstated, a day fixed for the hearing, and leave given to take proof. Both sides proceeded to take evidence, after notice given; new parties were made and other proceedings had. On the day set apart for the hearing, two and a-half years from the filing of the answer, exceptions thereto were for the first time taken. HELD:

That the allowance of the exceptions at that stage of the cause, would be not only an unreasonable indulgence in itself and an encouragement to vexatious delays in the prosecution of suits, but a manifest injustice to the defendants who had incurred the expense of taking proof, upon the well grounded belief that the case was to be heard upon its merits.

And the answer must be taken free from all objections, either on account of irregularity or insufficiency, and being responsive to the material allegations in the bill, the burden of proof rests with the complainants.

The voluntary appearance of a party to a suit or proceeding, must be considered as a waiver of formal notice.

Where a party to a proceeding before the Orphans' Court, has the right to demand plenary proceedings, or to have issues sent to the Circuit Court for trial, and fails to do so, he is not entitled to ask the interposition of a Court of Equity, by writ of injunction to restrain the execution of an order passed by said Orphans' Court upon a matter within its jurisdiction.

The Act of 1861, ch. 32, empowers the Court, at the instance of either party on a motion to dissolve an injunction, to order testimony to be taken before such person, and upon such notice, and in such manner, as the Court, in its discretion, may direct, to be used at the hearing of such motion.

APPEAL from the Circuit Court for Prince George's County, in Equity.

This case was before this Court on a former occasion, (*vide* 22 *Md. Rep.*, 447,) on an appeal from an order, dated the 21st of April, 1863, granting an injunction to prevent Richard S. Blackburn, the administrator of Dr. David Craufurd, and one of the present appellees, from making distribution of the estate of his intestate. This Court, under the circumstances of the case as then presented, affirmed the order granting the injunction, and remanded the cause for further proceedings. The case was re-instated, and further proceedings were accordingly had, a large mass of testimony was taken on both sides, and numerous exceptions thereto were filed by the respective parties. After the time for hearing the cause had been thrice enlarged, upon application of the complainants, they moved that the answer of the defendants be taken from the files of the Court. After argument, and a careful examination of the questions presented, the Court (A. B. HAGNER, Special Judge) overruled the motion. Subsequently the complainants filed exceptions to the answer. The cause was afterward heard upon its merits; and the Court, on the 9th of January, 1866, passed an order overruling the exceptions of the complainants to the answer, as also their exceptions to the testimony, save the sixth exception, which was sustained, and dissolving the injunction. From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*Edward W. Belt* and *Thomas G. Pratt,* for the appellants.

The first point arising on the present hearing, is the propriety of the Court's action in overruling the *preliminary*

suggestion in writing, submitted by the complainants below, to the effect, that the paper filed as the general answer of the defendants be taken from the file; because the said answer was not sufficiently sworn to; and because, if sworn to *at all*, it was only sworn to by Sarah Forrest, one of the defendants, and was therefore only her answer.

We say the Court erred, and for these reasons:

1. That these objections were properly in order when taken. *Gibson vs. Tilton*, 1 *Bland*, 352.

2. That the affiant does not profess, in the affidavit, to swear to her *answer* at all, but to the *bill;* and she could not have been prosecuted for perjury. *Alex'r Ch. Pr.*, 61-290; *Coale vs. Chase*, 1 *Bland*, 137; *Gibson vs. Tilton*, 1 *Bland*, 352.

3. That the answer, if it be the answer of any one, is that of Sarah Forrest only; and the bill was therefore unanswered as to the other parties; and the motion to dissolve could not therefore be properly heard. *Binney's case*, 2 *Bland*, 109; *Jones vs. Magill*, 1 *Bland*, 177; *Salmon vs. Clagett*, 3 *Bland*, 125; *Nesbitt vs. Dallam*, 7 *G. & J.*, 494; *Richter and Wheat vs. Pue and Wife*, 9 *G. & J.*, 475; *Warfield vs. Banks*, 11 *G. & J.*, 98; *Bouldin, et al. vs. Mayor & C. C. of Baltimore*, 15 *Md. Rep.*, 18.

4. That the proceedings show that Sarah Forrest was not a party in interest, and the answer, if good as against the other objections, was no sufficient answer here. *Code of Pub. Gen'l Laws*, Art. 16, sec. 103, and Art. 47, sec. 27.

We now proceed, leaving the preliminary points that were ruled against us, to the consideration of the general subjects disclosed by the record, and contend that the answer was defective and insufficient, and ought not to have been ruled sufficient.

1st. Because there are parts of it which are not responsive, and could not therefore be considered on the motion to dissolve, &c. *Gibson, et al. vs. McCormick*, 10 *G. & J.*, 65; *Fitzhugh, et al. vs. McPherson, Adm'r of Neth*, 3 *Gill*, 408; *Hardy and Talburtt vs. Summers and Wife*, 10 *G. & J.*, 316; *Drury vs. Roberts*, 2 *Md. Ch. Dec.* 157.

2d. Because there are parts of the answer that set up *new matter*, or assert rights affirmatively or in avoidance, and which should not have been considered on said motion, &c.

3d. Because there are certain allegations in the answer only sworn to as the "information and belief" of the affiant, and therefore inadmissible. *Kent vs. Richards*, 3 *Md. Ch. Dec.*, 392; *Alex. Ch. Pr.*, 86.

4th. Because the answer does not swear away *all the equities* of the bill, and is therefore insufficient on this motion. *Kent vs. Richards*, 3 *Md. Ch. Dec.*, 392; *Alexander's Ch. Pr.*, 116; *Doub vs. Barnes*, 1 *Md. Ch. Dec.*, 127; *Coale vs. Chase*, 1 *Bland*, 136; *Hardy and Talburtt vs. Summers and Wife*, 10 *G. & J.*, 316; *Hutchins vs. Hope*, 12 *G. & J.* 244; *Doub vs. Barnes, et al.*, 4 *Gill*, 1; *Warren vs. Twilley*, 10 *Md. Rep.*, 39; *Bouldin, et al. vs. Mayor & C. C. of Baltimore*, 15 *Md. Rep.*, 18; *Gelston vs. Rullman*, 15 *Md. Rep.*, 262.

5th. The allegation of *estoppel*, in the answer, was sufficient to vitiate it on the ground of its being *irresponsive and in avoidance*, and new matter. The alleged estoppel is introduced as a *plea*, and therefore could not be used in support of the motion to dissolve. 10 *G. & J.*, 65; 3 *Bl.*, 125; 2 *Md. Ch.*, 157; 6 *G. & J.*, 250; 3 *G. & J.*, 491; 2 *Bl.*, 254; 3 *Gill*, 408; 7 *H. & J.*, 160; *Alex. Ch. Pr.*, 85, 86.

6th. If the answer be defective on any ground, evidence cannot be admitted to supply the defect on this motion. *Bouldin, et al. vs. Mayor & City Council of Baltimore*, 15 *Md. Rep.*, 18.

In the next place we contend, that the Court erred in disallowing our exceptions to certain portions of the evidence. These exceptions were properly in order when presented. 2 *Bl.*, 37; 2 *H. & J.*, 192; 2 *H. & J.*, 443.

The depositions of C. C. Magruder and Thomas F. Bowie, before the commissioner, on 20th October, 1864, were improperly admitted. It is apparent from the commissioner's return that each of these witnesses, upon appearing, proceeded to state certain facts and identify certain papers, *before* (as far

as appears) any interrogatories were put to them *at all, in any form.* And that the remainder (or second part) of the evidence of each was given in response to interrogatories, that as far as appears, were put *orally.* Touching the *first part* of their depositions, we say the return is wholly irregular and inadmissible, because if as to *that part*, they were examined to written interrogatories, then the interrogatories are not filed and returned; and if they were examined orally, then the examination was illegal. *Alex. Ch. Pr.,* 70, 71.

If examined without *any* interrogatories, it was clearly illegal.

Touching the other portions of the evidence of said witnesses, the interrogatories that were afterwards put to them, were so far as appears, put orally, and the answers were therefore inadmissible.    9 *G. & J.,* 121.

It does not appear that they were properly *sworn.* The evidence of Wm. B. Hill ought also to have been excluded, it having been excepted to on the *same grounds* relied on as to that of Magruder and Bowie. Even if the interrogatories to the aforesaid three witnesses were lawfully put, on the grounds above excepted to, then they were generally void as *leading interrogatories,* and our exceptions ought to have been sustained *on that ground.*

Our exception to Jarboe's evidence before Hodgkin, a justice of the peace, taken on the 20th November, 1865, ought to have been ruled good, because there was not due and proper notice to the complainants; and the defendants' interrogatories to that witness, were leading interrogatories and inadmissible.    If our exceptions to the evidence of Bowie and Magruder, be held good on any ground, the Court will perceive that there is not in the case any evidence of the record and verdict from Charles county at all, it being identified only *by them.*

In the next place we contend that the injunction ought to have been continued, and the motion to dissolve overruled, upon three grounds, clearly growing out of the former deci-

sion by this Court, which clearly settles, that while the Orphans' Court of Prince George's county had a proper authority to pass the order of the 10th March, 1863, yet it could not be held valid if there were *fraud, collusion* or *impropriety* in its passage as alleged in the bill. Or if the complainants below did not have due notice. Or if the suits alleged by the bill to be pending in the Circuit Court of said county, were *in fact* pending at the time the order passed.

Since that decision, more than two years have elapsed, three other Judges have sat in the cause, and a large amount of evidence has been taken. Upon the evidence, we contend that it does disclose a sufficient "impropriety" in the passage of the order of the 10th March, 1863, to invalidate it, and to justify the maintenance of this injunction. The record discloses that an order was passed by the said Orphans' Court, on the 20th January, 1863, by which the remainder of the personal estate of David Craufurd, undistributed, was directed "to be brought into the Court, *as soon as and when collected,* to be invested under the further order of the Court." But that on the said 10th of March of the same year, without the intervention of any circumstance *new to the case* or to its *status,* the same Court on the petition of the defendants below passed the order of *that date,* directing an absolute distribution of said fund (consisting of over $50,000,) among Blackburn and his co-claimants, to the express exclusion of the complainants below, *by name.*

The complainants below, then applied for and obtained the injunction, on the grounds named in the bill; the chief of which was that the original order of 20th January, 1863, had been passed by agreement. A large mass of testimony, conflicting in some respects, was taken in regard to these transactions.

The general effect of the evidence shows the agreement set out in the bill substantially. Taking the whole testimony as admissible notwithstanding its conflicts, it is conclusively shown *at the very least,* that *all parties agreed,* on the 20th

January, 1863, to the passage of an order to bring these funds into Court. And that Blackburn agreed thereto expressly, on the offer of the other side to avoid the passage of an order requiring him to give a new bond, with resident sureties, which he could not give. And that the funds were to be brought in to be invested, according to the terms of *the* order *then passed.* The terms of that order conclusively show that *that* investment was to continue for a long period. The funds consisted chiefly of bonds and notes, most of them not even in suit, requiring several years for their collection. The evidence of two of the counsel, the Judges and the register shows that the settlement then made, by the passage of said order, was regarded by *all* as a definite settlement for the time being, to last until the settlement of *some other litigation then depending between the same parties.*

We further contend that it was established by the former opinion, that the order of the 10th March, 1863, would not be valid, if passed without due notice to the complainants below, *although,* they say, it appeared that the complainants' counsel was present in Court and argued against the order. There must, therefore, in the Court's view, have been some *other* notice to the parties, than the mere presence of counsel, regarded as necessary. And the proof further shows, an entire absence of any other notice whatever to the complainants below; except by the aforesaid *presence of their counsel,* which this Court has already said, was *no sufficient notice.* We hold this point to be conclusive upon the present hearing, and practically *res adjudicata.*

The third point settled by the Court in our apprehension, is not more conclusive, namely, that if the suits alleged by the bill to be pending in the Circuit Court, were in fact pending at the time the order passed, it was invalid.

There were suits, (four in number,) brought by the then complainants below, in the Circuit Court for Prince George's county, in their respective rights, against the said Richard S. Blackburn, and the sureties upon his administration bond,

to recover their respective distributive shares of the personal estate of David Craufurd, as the heirs-at-law of said David; and they were pending in that Court, even *prior* to the passage of the *first* order of the Orphans' Court on the 20th January, 1863.

Upon this subject we hold, that the parties had a right to bring these suits, and that the Circuit Court was the proper tribunal in which to bring them; that the Circuit Court acquired jurisdiction over the subject matter from the time of the suits being brought, and that the Orphans' Court could not by any order of its own, *oust* the jurisdiction of the Circuit Court so acquired. *Code of Public General Laws, Art.* 93, *sec.* 39; *Coward vs. Worrell,* 7 *G. & J.,* 475; *Briesch vs. McCauley,* 7 *Gill,* 189; *Dunnock vs. Dunnock,* 3 *Md. Ch. Dec.,* 140; *Warford vs. Colvin,* 14 *Md. Rep.,* 555, 557, 558.

*C. C. Magruder, Thomas F. Bowie* and *Thomas S. Alexander,* for the appellees.

The appellants have failed to show that they had no notice of the proceedings which eventuated in the order of the 10th of March, 1863. This Court has already determined that the burthen of proving want of notice rests on them. And in the absence of any declaration on the subject, the like inference would be supplied by the principle on which alone equity can interfere to restrain the proceedings of an Orphans' Court in a matter within 'its acknowledged jurisdiction. Courts of Equity do not lightly interfere with judgments at law and relief will not be granted if the party has had an opportunity of making his defences in a Court of law. 2 *Story's Equity,* 895, *a; Gardner vs. Jenkins,* 14 *Md. Rep.,* 61; *Windwart vs. Allen,* 13 *Md. Rep.,* 197; *Chappel, et al. vs. Cox,* 18 *Md. Rep.,* 513. Upon these authorities it may safely be assumed that a person who would seek relief in equity against the effect of a proceeding in the Orphans' Court, must show that he was not a party expressly or constructively to the proceeding, and had no opportunity of disclosing or enforcing his

defences in the course of the proceeding; and a *fortiori*, that he must fail in his appeal, if it be shown that he was actually a party litigant, and present in Court as such at the moment of the passing of the order by which he pretends to have been aggrieved. Formal notice by citation or express service is not necessary to be shown when the party has notice in fact, and appears and takes part in the discussion. *Porter vs. Timanus*, 12 *Md. Rep.*, 283; *Wampler vs. Wolfinger & Strite*, 13 *Md. Rep.*, 347; *Walker vs. Robbins*, 14 *Howard*, 584.

What is the proof of notice? Mr. Belt was in Court on the 17th of February, 1863, when Blackburn's petition of that date was submitted. He complained that neither he nor his clients had notice of the application, and after some discussion the Court rejected the order which had been prepared by Mr. Bowie, and signed the order which was prepared by Mr. Belt. Mr. Belt asked for time expressly to enable him to advise with Mr. Berry and their clients. They appeared on the day appointed, that is, the 10th of March, 1863, as counsel for the complainants, and the Court say they argued the case as counsel. They had the right and the opportunity of placing the defence of their clients on the record and the effect of the order passed by the Court is not impaired, nor are our rights to be prejudiced by that deliberate waiver of their privilege. It is a pregnant circumstance that the bill does not complain of a want of notice or of an opportunity for defence against the application.

As to collusion: "Collusion with the administrator," implies *ex vi termini*, the presence of some one with whom the administrator could collude. Collusion is the secret concert of action, between two or more for promotion of some fraudulent object. Who then are the persons with whom the administrator is supposed to have colluded? In the present state of the record there are only three classes of persons with whom the administrator could by possibility have colluded, namely, the Court—between whom and the administrator, the imputation of collusion is simply inadmissible; the represen-

tatives in like degree with the administrator—there is no proof that they were parties to the alleged agreement of the 20th of January, 1863, or even had notice that any such agreement was pretended at any time before the filing of the bill in this cause. It is not shown that they took any part in the proceedings of the 17th of February, 1863, or the 10th of March, 1863. And if this were otherwise, it would be impossible to infer collusion from an open effort to enforce distribution, by the act of the most appropriate tribunal. The third class embraces the counsel for the administrator. Between counsel and client there were discussions doubtless, earnest and confidential, and if it be true that the counsel for the administrator did make with the counsel for the present complainants an agreement, such as is alleged, and afterwards violated that agreement in manner as alleged, it would be unnecessary to enquire whether their misconduct amounted to what the law would view as collusive. It would unquestionably have been faithless.

As to fraud or imposition: It is not pretended that the justices of the Court were defrauded or imposed on. Neither can it be alleged with any color of probability that the counsel for the administrator practised imposition on the counsel for the present complainants. They were dealing with each other at arms length, from opposite sides of the trial table and in the presence of the Court. The fraud alleged consists in the violation of an agreement, without one circumstance to distinguish the present from the thousand and one cases of violated contract, which are happening day by day. It is not alleged that the agreement was entered into by the counsel for the administrator on the premeditated purpose of correcting its obligation at a future day. It is not even pretended that by entering into the agreement, the complainants, on the 17th of February, or the 10th of March, 1863, were reduced to a position less eligible than that which they occupied on the 20th of the preceding January. On the contrary their situation had become improved.

The Orphans' Court has no authority to order funds to be brought in and invested to abide the event of litigation elsewhere; and therefore, could not have sanctioned the alleged agreement that the fund should be brought into Court to abide the event of the suits pending in the Circuit Court. The powers of an Orphans' Court are strictly defined by statute; it is to provide for collecting together the assets of the deceased, and it must make distribution as soon as the estate is ready for distribution. Its authority may be superseded by equity; but it cannot decline jurisdiction in favor of a Court of law; nor delay distribution because of the pendency of actions at law. Hence, on the petition of the administrator averring his readiness to make distribution, the Court did right to pass its order of the 17th of February, and its subsequent order of the 10th of March, 1863, and there is no conflict between those orders and the previous order of the 20th of January, 1863, which was designed simply to gather in and secure the fund for future distribution.

The matters of fact which are now relied on as constituting the equity of this bill, were within the knowledge of the complainants and their counsel, on the 17th of February, 1863, when they appeared before the Orphans' Court and resisted the application of the administrator then pending. Those matters were just as available as a defence against the said application before the Orphans' Court, as they can be in support of the present proceeding before this Court; the complainants were indulged with a full opportunity for alleging and proving, if they could, such their defences; their counsel have shown that they waived such their opportunity deliberately and considerately. They are, therefore, concluded by the order of the 10th of March, 1863, as fully as if all those matters had been relied on by them as causes against the passage of the said order, and as if such matter of defence had been formally overruled by the Orphans' Court. The bill does not allege the recent discovery of a single matter of fact out of which could arise any pretext of equity. Every fact

which transpired before the 10th of March, 1863, the date of the final order, was certainly known to them before that day, and if the passing of that order which was passed in their presence is supposed to form the equity of the case, the bill ought to have been filed within thirty days thereafter. *Edwards, Adm'r of Bruce, vs. Bruce,* 8 *Md. Rep.,* 387.

In reference to the exceptions which have been taken to the answer of the defendants, whilst it is conceded that, regularly, the answer ought to be sworn to by all the defendants who profess to answer it, it is insisted: That the complainant may waive his right to require the answer to be sworn to by a sole defendant, or by one or more of several defendants; the waiver may be expressed or implied from *laches* indulged in for an unreasonable time, or from any circumstance which leads to the fair inference that the benefit of the objection was intended to be waived. The right to insist on those objections, either by way of motion to take the answer from the files, or by exception to the answer, was waived by lapse of time, and the proceedings had in the cause after filing the answer, and before the entry of the motion. *Md. and N. Y. Coal and Iron Co. vs. Wingert,* 8 *Gill,* 170; *Billingslea vs. Gilbert,* 1 *Bland,* 566; *Binney's case,* 2 *Bland,* 109; *Colvin vs. Warford, et al.,* 18 *Md. Rep.,* 275; *Henderson vs. Gibson,* 19 *Md. Rep.,* 234; *Nesbitt vs. Dallam,* 7 *G. & J.,* 509; *Fulton Bank vs. Beach, et al.,* 2 *Paige,* 307; *Graham vs. Stagg,* 2 *Paige,* 324. The complainants have likewise waived their right to take advantage of any defect in the form of Mrs. Forrest's affidavit.

By the 25th rule of the Circuit Court, the complainant has until the next term after an answer has been filed, to except thereto, after which time he shall be subject to the rule for further proceedings. If the complainant be precluded by his *laches* from excepting to the answer for insufficiency in the matter of the answer, which may affect the merits of the case, *a fortiori* might he by the same delay be presumed to have waived his right to take advantage of any supposed defect or informality in the affidavit to the answer.

On the former appeal, the sufficiency of this answer was open for revision. If it had been found defective in any particular the appeal must have been dismissed. *Keighler, et al., vs. Savaye Manufacturing Co.,* 12 *Md. Rep.,* 412.

In reference to the testimony in the cause, and first as to the exceptions taken by the complainants to that offered on the part of the defendants. The witnesses were examined under an order which authorized the taking of the testimony of witnesses in the form of depositions, and not under a commission in regular form. We insist that the manner in which the examination was conducted, is warranted by the usual course of proceeding in such cases; the examinations were had in the presence of counsel for the complainants, who might, if they had pleased, have required interrogatories in writing to be exhibited. It is altogether too late at this time to except to the depositions on the ground of informality. *Tolson vs. Tolson,* 4 *Md. Ch. Dec.,* 123. In the next place, as to the exceptions of the defendants to testimony taken on the part of the complainants, it is insisted that after a witness has been fully examined, he cannot be re-examined touching the same matters, without the special order of the Court. *Daniel's Ch. Pr.,* 970; and that the order passed on the 20th of January, 1863, cannot be varied or altered in significance, by the oral testimony of the members of the Court or the by-standers, of what passed on the occasion, nor by the impressions or understanding of the offer of the order, which may have been entertained by any of those persons. And further, that the testimony of the witnesses is to be read as evidence of facts, which are supposed to be within their knowledge, and of which the adverse party had knowledge or ought to have had knowledge, and is inadmissible as evidence of facts transpiring or conversations had behind the backs of the defendants, or of hearsay or of impressions or opinions entertained by the witnesses.

Belt. Adm'r, *vs.* Blackburn, Adm'r.

ROBINSON, J., delivered the opinion of this Court.

The preliminary questions, raised upon the state of the pleadings in this cause, were correctly decided by the Special Judge, for the reasons assigned by him, in the able and learned opinion, filed in the Court below. It is well established, that a party may either expressly or impliedly, waive a right or advantage, which he might have enforced in proper time and manner. This principle, recognized alike by Courts of Law and Equity, applies with peculiar force to this case. The bill was filed in April, 1863, and the answer, in May, following. Upon the prayer of Blackburn, one of the defendants who did swear to the answer, a day was set apart for the hearing. At the time designated, objection was made by the complainants to the order setting the cause down for a hearing, and another day was fixed. Again the hearing was postponed, and the defendants appealed from the order, granting the injunction. In the appellate Court, no objection was made to the answer, although if made, the appeal would have been dismissed. *Keighler vs. The Savage Manufacturing Co.*, 12 *Md. Rep.*, 412. The order granting the injunction was affirmed, and the cause remanded. Upon the petition of Blackburn it was reinstated, a day fixed for the hearing, and leave given to take proof. Both parties proceeded to take evidence, giving notice to each other. New parties, complainants and defendants, were made, and other proceedings had; and on the 21st of November, two years and a half from the filing of the answer, on the day set apart for the hearing, exceptions to the answer, for the first time were taken. From all these proceedings, we cannot escape the conclusion, that both parties regarded the issues as fairly made, and that the cause was to be heard on its merits, free from any technical objections to the manner in which the defence was presented. To permit exceptions to be filed to the answer at this stage of the cause, would be to grant not only an indulgence unreasonable in itself, and to encourage vexatious delays in the prosecution of suits, but it would be manifestly unjust to the de-

fendants who have incurred the expense of taking proof, upon the well grounded belief, that the case was to be heard upon its merits.

The cases of *Gibson vs. Tilton*, 1 *Bland*, 353, and *Salmon vs. Claggett*, 3 *Bland*, 126, relied on by counsel for appellants, are not in conflict with these views. These cases were decided previous to the passage of the Acts of 1835, chapters 346 and 380, authorizing parties to take proof, and when on a motion to dissolve an injunction, the Court was confined absolutely to the bill and answer. The motion, therefore, in the language of the Chancellor, "in its very nature was founded upon the correctness and sufficiency of the answer." In such a case, the defendant could not object to the filing of exceptions to the answer, at the hearing, because "having planted himself upon the sufficiency of his answer, at that time and for that purpose, he stands pledged to sustain it in all respects; or he must fail in his motion." In this case, therefore, the answer must be taken free from all objections, either on account of "irregularity or insufficiency;" and being in our opinion, responsive to all the material allegations in the bill, the burden of proof rests with the complainants. How far the evidence entitles them to the relief prayed, is the next question to be considered. If entitled, it must be upon the faith of an agreement, alleged in the bill to have been made by Blackburn, on the 20th January, 1863, by which he was to bring into the Orphans' Court, all the property unadministered, to be invested by said Court, pending the litigation between the parties, touching the title to said property; and the fraudulent evasion of this agreement, by the subsequent petition of Blackburn, and the order of the Orphans' Court, passed thereon, on the 10th of March, directing the distribution to be made. In the former appeal, in this cause, from the order granting the injunction, this Court decided "that the order of the 10th of March, was passed by the Orphans' Court, upon a matter within its jurisdiction, and could not be impeached collaterally, except on the ground that there was such impro-

priety in the action of the Court as would vitiate it; such as want of notice to the parties, or collusion with the administrator, or that it was obtained by fraud, or imposition."

After a careful examination of all the evidence, it is our opinion, that the allegation in the bill, as to the agreement of the 20th January, and its fraudulent evasion, by the order of the 10th of March, has not been sustained by that weight of evidence, required by the rules of law. If so, the order of the 10th of March, stands unimpeached on the ground of "fraud, imposition or collusion with the administrator." But it is insisted in the next place, that this order was passed without notice. It is true it does not appear that a formal summons was issued, but it cannot be denied, that these complainants from the 20th of January, 1860, to the passage of the order of the 10th of March, 1863, were in the Orphans' Court, asserting at various times, their claims as next of kin of Dr. Craufurd. On the 27th of February, when Blackburn made application by his petition, for a distribution among the parties named therein, being next of kin of the intestate; one of the counsel for complainants appeared in Court, and asked a postponement of the matter, alleging that it was a surprise upon them, and that his colleague was absent. Upon his application, the Orphans' Court, fixed the 10th of March for a hearing. On that day, the counsel for both parties appeared, the merits of the petition were fully discussed, and after argument the Court passed the order directing distribution. In view of these facts, it cannot be said that the order was passed without notice, or without being heard, and without the opportunity of appealing to another tribunal, if aggrieved.

The voluntary appearance of a party to a suit or proceeding, must be considered as a waiver of formal notice. 2 *Starkie on Evidence, part 2, page* 90. This Court in *Balch vs. Zentmeyer,* 11 *G. & J.,* 267, decided, that the appellant could not object to the passage of a decretal order, in a case, because he appeared and contested the same.

Belt, Adm'r, *vs.* Blackburn, Adm'r.

Fully recognizing the general rule of law, that no judgment is to be pronounced against a party, without an opportunity of being heard, there is nothing in the record before us, which makes the order of the 10th of March, obnoxious to this cardinal principle in the administration of justice. But it is also insisted, that the Orphans' Court was without jurisdiction in the matter of the distribution, inasmuch as the complainants had instituted suits in the Circuit Court, for Prince George's county, against the administration bond of Blackburn, claiming to be entitled, as next of kin of David Craufurd. This question was definitely decided in the former appeal, and is therefore "*res adjudicata.*" 22 *Md.* 465. In that case the Court, said, that the 230th and 231st sections, of Article 93 of the Code, "plainly confer authority upon the Orphans' Court, to hear and determine the question who are next of kin, and to decide between parties claiming adversely to each other, and determine which of them are next of kin, entitled to distribution." If the judgment of the Orphans' Court was erroneous, "the remedy of the parties aggrieved, was by an appeal to have it reviewed and reversed." It is no answer to say, that an appeal in this case would have been of no avail, because the record would not have disclosed the facts, upon which the complainants base their claim. It was their right to have demanded plenary proceedings; or if preferring another tribunal, to pass upon the matter, to have caused issues to be sent to the Circuit Court for trial. Because they did not do this, can afford no reason why a Court of Equity should interfere by writ of injunction, to restrain the execution of an order, passed by the Orphans' Court upon a matter within its jurisdiction.

We also concur with the Special Judge, in overruling the exceptions to the proof taken by the defendants. The evidence was taken under the Act of 1861, chapter, 32, which empowers the Court, to order testimony to be taken before such persons, and upon such notice, and in such manner, as the Court in its discretion may direct. Judge Brent's order

of the 14th of September, " gave leave to the parties to take depositions before one of the standing commissioners of the Court, or a justice of the peace, after such notice." We concur with the Judge below, " that this form of taking evidence, is somewhat summary in its character, and free from many of the formal rules, which might apply to testimony taken under a commission in the regular way." The evidence was taken after due notice, and we think in conformity with the order of the Court.

> *Decree affirmed, bill dismissed, and costs to be paid by the administrator of David Craufurd.*

(Decided 13th February, 1868.)

MILLER, J., dissented.